Matter of Karol (2019 NY Slip Op 04166)





Matter of Karol


2019 NY Slip Op 04166


Decided on May 29, 2019


Appellate Division, Second Department


Per Curiam.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 29, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
WILLIAM F. MASTRO
REINALDO E. RIVERA
MARK C. DILLON
RUTH C. BALKIN, JJ.


2016-01156 

[*1]In the Matter of Louis P. Karol, an attorney and counselor-at-law. Grievance Committee for the Tenth Judicial District, petitioner; Louis P. Karol, respondent. (Attorney Registration No. 2027878)



DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Tenth Judicial District. By decision and order on motion dated June 27, 2016, this Court, on its own motion, authorized the Grievance Committee to institute and prosecute a disciplinary proceeding against the respondent, and the issues raised were referred to John P. Clarke, as Special Referee, to hear and report. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the First Judicial Department on December 2, 1985.



Catherine A. Sheridan, Hauppauge, NY (Stacey J. Sharpelletti of counsel), for petitioner.
Michael S. Ross, New York, NY, for respondent.



PER CURIAM.


OPINION & ORDER
The Grievance Committee for the Tenth Judicial District (hereinafter the petitioner) served the respondent with a verified petition dated July 13, 2016, containing two charges of professional misconduct. The respondent served and filed a verified answer dated August 29, 2016, in which he, inter alia, admitted the factual specifications supporting the charges. Related disciplinary proceedings were commenced against each of the respondent's partners (see Matter of Sosnik, _____ AD3d _____ [decided herewith] and Matter of Hausman, _____ AD3d _____ [decided herewith]). By agreement of the respondent and his partners, a joint disciplinary hearing was conducted on May 18, 2018. In separate reports dated July 6, 2018, the Special Referee sustained all charges against the respondent and his partners. The petitioner now moves to confirm the Special Referee's report, which sustained the charges, and to impose such discipline as this Court deems just and proper. The respondent's counsel has submitted an affirmation in support of the petitioner's motion to confirm, together with a memorandum of law, and urges the Court to grant the motion, sustain the charges, and impose a public censure.
The Petition
Charge one alleges that the respondent misappropriated client funds, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows:
1. In or about 1994, the respondent and his fellow shareholders and partners, Michael J. Hausman and Howard L. Sosnik, formed the law firm Karol, Hausman & Sosnik, P.C. (hereinafter the Firm).
2. At all relevant times herein, the respondent and his partners maintained and were signatories on an attorney escrow account at JPMorgan Chase Bank incident to the Firm's law [*2]practice, entitled "KAROL HAUSMAN & SOSNIK, P.C. Attorney Escrow Account" and bearing account number xxxx0565 (hereinafter the escrow account).
3. At all relevant times herein, the Firm employed Soncerie Cornegy as its office manager.
4. The respondent and his partners delegated to Cornegy, among other things, responsibility for maintaining the bank and bookkeeping records for the escrow account.
5. The respondent failed to properly review, audit and reconcile the escrow account, and he did not properly supervise Cornegy's activities with respect to the escrow account.
6. On or about May 2, 2013, the Firm was notified that check number 6643, issued from the escrow account to 845 Grand Street Associates, LLC, a client of the Firm, for $93,202.04, was presented for payment against the escrow account and dishonored due to insufficient funds.
7. By letter dated May 7, 2013, Sosnik, on behalf of the Firm, reported the dishonored check to the petitioner.
8. With the May 7, 2013 letter, Sosnik provided documentation establishing that the dishonored check was caused by an inadvertent over-disbursement at a real estate closing for which the Firm was representing 845 Grand Street Associates, LLC, as the seller.
9. The respondent and his partners were each notified by the petitioner that sua sponte investigations had been opened against them and they were requested to submit bank and bookkeeping records for the escrow account.
10. The respondent and his partners advised the petitioner that at or about the time the Firm self-reported the dishonored check on May 7, 2013, it was discovered that Cornegy had engaged in unauthorized financial transactions involving, among other things, the Firm's bank accounts, including the escrow account.
11. On or about May 8, 2013, the respondent and/or his partners identified outstanding escrow checks and determined that, as of that date, the balance in the escrow account was deficient by at least $80,000.
12. On or about May 8, 2013, the respondent and his partners deposited $100,000 in personal funds into the escrow account to cover the identified outstanding escrow checks.
13. The Firm retained the accounting firm Hoberman, Goldstein & Lesser, CPAs, P.C. (hereinafter the Accounting Firm), to reconcile and reconstruct the escrow account.
14. The respondent and his partners were advised that the Accounting Firm's reconstruction of the escrow account dating back to 2008 revealed that the account was still deficient by $102,530.43, even after taking into account the referenced $100,000 deposited by the partners.
15. On or about November 26, 2013, the Firm deposited $102,530.43 into the escrow account to offset the remaining deficiency.
Charge two alleges that the respondent failed to adequately supervise the work of a nonlawyer employee of the Firm, in violation of Rules of Professional Conduct (22 NYCRR 1200.0) rule 5.3(a), and is responsible for that nonlawyer employee's conduct, under Rules of Professional Conduct (22 NYCRR 1200.0) rule 5.3(b)(2)(ii), as follows:
16. The factual specifications of Charge One, paragraphs 1 through 15, are repeated and re-alleged, as if more fully set forth herein.
17. The respondent failed to exercise the reasonable management or supervisory authority over Cornegy by which the respondent should have known of Cornegy's conduct with respect to the escrow account, at a time when the consequences of that conduct could have been avoided or mitigated.
The Hearing Evidence
At a joint hearing on May 18, 2018, the respondent was the first witness to testify, and detailed, inter alia, the Firm's bank and bookkeeping practices, as well as the events following the discovery of the escrow account shortage. The respondent's partners also testified, and adopted the respondent's testimony as to those circumstances.
The respondent and his partners are all experienced practitioners and have a background in accounting. The Firm's escrow account was used predominantly to hold client and/or third-party funds related to real estate transactions, which were ancillary to the estate planning and estate administration work the Firm performed for clients. According to the respondent, the Firm generated approximately $4 to $5 million per year in revenue.
For approximately 10 years, and until May 2013, the Firm entrusted the bank and bookkeeping responsibilities for the Firm's bank accounts, including the escrow account, to a [*3]nonlawyer employee, Cornegy. The respondent described Cornegy as a dedicated and trusted employee. While the respondent and his partners would "spot-check" transactions on occasion, they did so to ensure the disbursements equaled the corresponding deposit. The respondent and his partners admitted that they failed to properly review, audit, and reconcile the escrow account, and that they did not supervise Cornegy's activities with respect to the escrow account.
On May 1, 2013, Cornegy notified the Firm that she was leaving her position. The following day, the Firm was notified by Chase Bank that an escrow account check issued to a client had been dishonored due to insufficient funds. Sosnik immediately undertook an investigation, and determined that this check represented an over-disbursement from a real estate closing. The respondent testified that Sosnik informed him of his findings, and he requested Sosnik to send a letter to notify the petitioner of the dishonored check, as the respondent "knew that when a check gets dishonored it's gonna lead to questions." Accordingly, Sosnik sent a letter dated May 7, 2013, to the petitioner providing notice of the dishonored check, and including documentation supporting the Firm's claim that the subject check had been dishonored as a result of an inadvertent over-disbursement.
On May 8, 2013, Sosnik was notified by Chase Bank that there were insufficient funds to cover another escrow account check in the sum of $5,143.92. During his conversation with the bank representative, Sosnik learned that the Firm had online access to its accounts, which the respondent and his partners contend was implemented by Cornegy without their knowledge. The online access permitted transfers to be made electronically. After immediately transferring $5,145 from the Firm's operating account to the escrow account, Sosnik began a review of all pending transactions. He discovered the Firm's financial documents had been removed from the file cabinets located in Cornegy's office, and that she had taken post-dated checks for her salary. However, the Firm still had the computer records for the escrow account. Sosnik's review determined that the escrow account balance was deficient by at least $80,000, based upon the outstanding escrow account checks and pending transactions. On May 8, 2013, the Firm wired $100,000 into the escrow account.
After retaining legal counsel, the Firm retained an accounting firm to reconcile and reconstruct the escrow account for a five-year period. The respondent testified that the Firm also reviewed their bank accounts online, and discovered that Cornegy had been transferring money between the Firm's escrow, operating, and payroll accounts, seemingly without "rhyme or reason," for a period of at least 3½ years.
The Accounting Firm's review determined that the escrow account balance remained deficient, notwithstanding the prior deposits made by the Firm in May 2013 ($5,145 and $100,000). On or about November 26, 2013, the Firm corrected the account deficiency by depositing an additional $102,530.43 into the escrow account. The respondent testified that, while reconciling the escrow account, the Accounting Firm had "a high level of confidence" that certain credit card charges, totaling approximately $42,500, could be tied to specific defalcations or improper spending by Cornegy.
The respondent testified that he and his partners had "a long discussion" about reporting Cornegy to law enforcement and wanted to do so, but they decided that "they could not let this get out in the public." The respondent explained that as "fiduciaries, we pride ourselves in protecting our clients. We were victims, but we didn't want it to get out there that we were foolish because that would hurt us."
In June 2014, Michael J. Hausman left the Firm, and started his own firm. The respondent and Sosnik continued to practice together, and have instituted changes in their management of the escrow account, including, inter alia, a review of all checks that are being issued, using online access to observe every transaction, and having a monthly reconciliation report prepared, which is reviewed by the respondent and Sosnik.
Findings and Conclusion
In view of the respondent's admissions and the evidence adduced at the hearing, we find that the Special Referee properly sustained all charges. Accordingly, the petitioner's motion to confirm the report of the Special Referee, in which the respondent joins, is granted.
In determining an appropriate measure of discipline to impose, we note that whether, and to what extent, attorneys are subject to discipline for defalcations occasioned by someone under their supervision depends on a number of factors, as follows:
"(1) the subject attorney's partnership status and/or level of experience; (2) the presence (or absence) [*4]of early warning signs' of financial improprieties, whether such signs were ignored and, if so, for how long; (3) whether the proper authorities were notified of defalcations upon their discovery; (4) the presence (or absence) of monetary loss to clients and the magnitude thereof; and (5) whether the attorney attempted to reimburse client losses caused by another" (Matter of Galasso, 105 AD3d 103, 105).
Here, at the time of the underlying events, the respondent and his partners were experienced practitioners, all of whom had a background in accounting. For approximately 10 years, they delegated the bank and bookkeeping responsibilities for the Firm to a nonlawyer employee, Cornegy. The respondent and his partners admitted that, for an extended period, they failed to properly supervise Cornegy and failed to provide proper oversight of the Firm's escrow account, resulting in the misappropriation of client funds in excess of $202,000. While the respondent and his partners claim there were no early warning signs of the financial improprieties occurring in the escrow account, the record reveals otherwise. Indeed, the respondent testified that once they went online and looked at their accounts, they saw that, over a 3½ year period, Cornegy was transferring client funds between the Firm's escrow, operating, and payroll accounts. Although the respondent and his partners were unaware that online access had been instituted for the Firm's bank accounts, these questionable transfers were also listed on the monthly bank statements received by the Firm. It is also noted that online transfers were clearly designated as such on the bank statements. We find that had the Firm's partners provided proper oversight, including a review of the Firm's escrow account bank statements, the questionable transfers between the Firm's escrow, operating, and payroll accounts, including those transfers which were made using online access, should have served as an early warning to the respondent and his partners to undertake greater scrutiny of the escrow account transactions. The failure to detect these early warning signs is directly attributable to the respondent's and his partners' failure to provide proper oversight of the escrow account.
In mitigation, we have considered, among other things, the respondent's and his partner's acceptance of responsibility and candor; the absence of venal intent; the Firm's replenishment of the misappropriated client funds so that no client sustained a continued financial loss; the Firm's cooperation with the petitioner's investigation; the remedial actions taken to institute proper bank and bookkeeping practices to avoid a reoccurrence; the expressed remorse; the character evidence; and the respondent's unblemished disciplinary record in more than 33 years of practice.
Under the totality of the circumstances, we find that the respondent's conduct warrants his suspension from the practice of law for a period of six months.
SCHEINKMAN, P.J., MASTRO, RIVERA, DILLON and BALKIN, JJ., concur.
ORDERED that the petitioner's motion to confirm the Special Referee's report is granted; and it is further,
ORDERED that the respondent, Louis P. Karol, is suspended from the practice of law for a period of six months, commencing June 28, 2019, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than November 27, 2019. In such application (see 22 NYCRR 691.11, 1240.16), the respondent shall furnish satisfactory proof that during the period of suspension he: (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the written rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11(a), and (4) otherwise properly conducted himself; and it is further,
ORDERED that the respondent, Louis P. Karol, shall promptly comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until further order of this Court, the respondent, Louis P. Karol, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other [*5]public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Louis P. Karol, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Aprilanne Agostino
Clerk of the Court